**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Brandon Jeffrey Day,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.: ________________**<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff Brandon Jeffrey Day, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchaser of a 2021 GMC Sierra 1500 vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. Plaintiff seeks damages related to his vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had he been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy is between citizens of different States and exceeds the sum or value of $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of Idaho. Defendant General Motors LLC is a Delaware limited liability company whose sole member is General Motors Holdings LLC, a Delaware limited liability company whose sole member is General

Motors Company, a Delaware corporation with its principal place of business in Michigan, and Defendant is therefore a citizen of Delaware and Michigan. Complete diversity of citizenship exists between the parties.

4. This Court also has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

5. This Court has supplemental jurisdiction over the Plaintiff's state law claims as set forth in 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

7. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

**PARTIES**

8. Plaintiff Brandon Jeffrey Day was, at all relevant times, an adult individual who is domiciled in Hansen, Twin Falls County, Idaho, and who intends to remain there, and who purchased the subject vehicle in Twin Falls, Twin Falls County, Idaho, which was manufactured or sold by Defendant. Plaintiff is a citizen of Idaho.

9. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Idaho and

throughout the United States. Defendant GM is a Delaware limited liability company. GM's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. GM is a citizen of Delaware and Michigan for diversity purposes.

## FACTUAL ALLEGATIONS

10. On October 21, 2022, Plaintiff purchased a 2021 GMC Sierra 1500 AT4, Vehicle Identification Number 3GTP9EEL0MG412926 (hereafter the "Vehicle"), from Premier Auto Group, 636 Pole Line Road, Twin Falls, Idaho.

11. The purchase price of the Vehicle was $75,129.00, including options, fees, taxes, and other charges.

12. At the time Plaintiff purchased the Vehicle, the Vehicle's odometer read 17,784 miles.

13. Plaintiff purchased the Vehicle for personal, family, or household use.

14. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

15. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle's delivery to the consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle's delivery to the consumer. The Vehicle was first placed in

service on January 1, 2021, and the unexpired balance of Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty transferred to Plaintiff upon his purchase of the Vehicle.

16. On October 21, 2022, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle.

17. The Vehicle is equipped with Defendant's 6.2 liter V-8 engine bearing the Regular Production Option designation L87.

18. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration reporting a defect in the L87 engines it had installed in model year 2021 through 2024 Chevrolet Silverado 1500, Chevrolet Suburban, Chevrolet Tahoe, GMC Sierra 1500, GMC Yukon, GMC Yukon XL, and Cadillac Escalade vehicles.

19. The recall was assigned NHTSA campaign number 25V-274 and Defendant's own field action number N252494000. It covers approximately 597,630 vehicles.

20. In its Part 573 report, Defendant identified two root causes of the defect. First, sediment and other manufacturing debris left on the connecting rods and within the crankshaft oil galleries can restrict lubrication and damage the rod bearings. Second, the crankshafts installed in the affected engines may have dimensions and surface finishes outside of Defendant's own specifications.

21. Defendant identified a suspect build period for the affected engines running from March 1, 2021 through May 31, 2024.

22. Defendant reported to NHTSA that, between April 29, 2021 and February 3, 2025, it had received 28,102 field complaints concerning the L87 engine, of which 14,332 reported a loss of propulsion.

23. Defendant further reported that it opened an internal investigation into the L87 engine in February 2022 and closed that investigation in February 2022.

24. Defendant's first recorded field complaint concerning the L87 engine, on April 29, 2021, came approximately eighteen months before Plaintiff purchased the Vehicle. Defendant opened and closed its internal investigation into the L87 engine in February 2022, approximately eight months before Plaintiff purchased the Vehicle.

25. Upon information and belief, Defendant also knew of the defect in its L87 engines from its own pre-production and pre-sale design validation, durability and quality testing, from supplier and manufacturing quality data concerning the connecting rods and crankshafts installed in those engines, and from internal engineering analyses, all of which predated Plaintiff's purchase of the Vehicle.

26. Defendant therefore knew, before Plaintiff purchased the Vehicle, that the L87 engine installed in the Vehicle was defective and was capable of causing a sudden loss of propulsion. Defendant nonetheless had not, as of October 21, 2022, disclosed that defect to NHTSA, to the owners of vehicles equipped with L87 engines, or to the purchasing public.

27. Defendant concealed the defect in its L87 engines for approximately two years and six months after Plaintiff purchased the Vehicle, and did not disclose it until it filed its Part 573 report on April 24, 2025.

28. In connection with the recall, Defendant issued Special Coverage Adjustment N252494003, which extends coverage for repair or replacement of the L87 engine to ten years

or 150,000 miles from the date the vehicle was placed in service, whichever comes first. That special coverage applies to the Vehicle.

29. The defect Defendant reported to NHTSA creates an unreasonable risk to the safety of Plaintiff and of the motoring public, because an L87 engine that fails while the vehicle is being driven causes an immediate loss of propulsion.

30. The defect Defendant reported to NHTSA has diminished the value of the Vehicle.

31. Had Plaintiff known, at or before the time he purchased the Vehicle, that the Vehicle was equipped with a defective L87 engine, he would not have purchased the Vehicle, or would have paid substantially less for it.

32. Since the time of Vehicle delivery to the present, the Vehicle has been out of service at least sixty-three (63) days due to a catastrophic engine failure and other defects.

33. On August 25, 2025, Plaintiff took the Vehicle to Twin Falls Chevrolet in Twin Falls, Idaho, Defendant's authorized dealership (hereinafter "Twin Falls Chevrolet"), for performance of Defendant's recall N252494000 - which Defendant's own repair order identifies as "L87 ENGINE LOSS OF PROPULSION" - and of Defendant's recall N252510321.

34. At the time the Vehicle's odometer read 58,827 miles.

35. Twin Falls Chevrolet performed the N252494000 recall remedy, recorded that the Vehicle's engine "passed test," and replaced the engine oil, the oil filter and the oil fill cap. Twin Falls Chevrolet also performed the N252510321 recall remedy by reprogramming the Vehicle's engine control module.

36. Defendant's own recall remedy was thus performed on the Vehicle, and Defendant treated the Vehicle as falling within the population of L87 engines covered by recall N252494000.

37. Defendant's N252510321 remedy reprograms the engine control module to display a warning message in the Driver Information Center if diagnostic trouble code P0016 sets. Diagnostic trouble code P0016 reports a fault in the correlation between crankshaft position and camshaft position. Defendant's own software remedy is therefore keyed to the crankshaft, one of the two root causes Defendant identified in its Part 573 report.

38. The remedy Defendant directed for the Vehicle under recall N252494000 was an inspection only. Defendant did not replace the Vehicle's engine, and did not otherwise correct the defect it had reported to NHTSA. Defendant returned the Vehicle to Plaintiff still equipped with the defective L87 engine.

39. During this visit, the Vehicle was out of service for two (2) days, and ready for pick up on August 27, 2025.

40. On October 10, 2025 - forty-four (44) days after Defendant inspected the Vehicle's engine under recall N252494000 and pronounced that it had passed, and after only approximately 1,350 additional miles of driving - the Vehicle's engine catastrophically failed while Plaintiff was driving it on the highway.

41. Plaintiff was driving at approximately sixty (60) miles per hour when the Vehicle's speed dropped to approximately fifty (50) miles per hour; approximately one mile later smoke filled the passenger cab; and when Plaintiff got out of the Vehicle he found that the engine oil and the skid plate were on fire.

42. Plaintiff took the Vehicle to Twin Falls Chevrolet on October 10, 2025.

43. At the time the Vehicle's odometer read 60,177 miles.

44. Twin Falls Chevrolet found that the Vehicle's engine was seized on arrival and verified a catastrophic failure of the bottom end of the engine. Twin Falls Chevrolet recorded that when the engine failed, the connecting rods created four holes in the engine, which allowed engine oil to reach the catalytic converters and the exhaust manifold and caused a fire that damaged a large part of the engine wiring harness and other components, including the starter and the knock sensor.

45. The connecting rods that destroyed the Vehicle's engine are the first of the two root causes Defendant itself identified in its Part 573 Safety Recall Report, and the loss of propulsion Plaintiff experienced is the precise hazard Defendant reported to NHTSA.

46. Twin Falls Chevrolet recorded that Defendant had verified that replacement of the Vehicle's engine was covered under Defendant's Special Coverage Adjustment N252494003. Defendant treated the repair as a warranty repair and paid for it, which is an admission that the Vehicle and the failure fell within Defendant's warranty coverage.

47. Twin Falls Chevrolet attempted repair by removing and replacing the Vehicle's engine assembly. Because the engine was seized and would not rotate, Twin Falls Chevrolet was unable to remove or reuse the transmission torque converter and bolts and replaced those as well. Twin Falls Chevrolet also replaced the intake manifold because of debris in the manifold, the starter and the knock sensor because of the fire damage, the engine wiring harness and the charge and starter cable because of the fire damage, the intake ducting from the air filter housing to the throttle body because of debris from the engine failure, and the engine oil cooler lines and the radiator because of debris in the oil system, and refilled the engine oil, the coolant and the transmission fluid.

48. The engine failure occurred approximately fifty-seven months after the Vehicle was placed in service, within the five-year term of Defendant's Limited Powertrain Warranty, and well within the ten-year / 150,000-mile term of Special Coverage Adjustment N252494003.

49. During this visit, the Vehicle was out of service for sixty-one (61) days, and ready for pick up on December 10, 2025.

50. Upon information and belief, the replacement engine Defendant installed in the Vehicle in December 2025 was manufactured, or remanufactured, to the same specifications and by the same manufacturing processes as the L87 engines Defendant built during the March 1, 2021 through May 31, 2024 suspect build period, and carries the same defect. The Vehicle therefore remains equipped with a defective L87 engine.

51. Defendant had publicly disclosed the defect in its L87 engines, its two root causes, and its capacity to cause a loss of propulsion approximately five and one-half months before the Vehicle's engine failed. Defendant had the Vehicle in the hands of its own authorized dealership for the recall inspection approximately six weeks before the failure. Defendant nonetheless neither replaced the Vehicle's engine nor otherwise corrected the defect, and left Plaintiff driving a vehicle it knew was equipped with a defective engine.

52. Since Defendant replaced the Vehicle's engine, Plaintiff has experienced the Vehicle's transmission bouncing and banging.

53. In total, the Vehicle has been out of service at least sixty-three (63) days due to the engine failure and other defects.

54. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

55. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

56. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

57. By letter sent via United States First Class Mail on June 25, 2026, Plaintiff notified Defendant of the defects in the Vehicle, revoked his acceptance of the Vehicle pursuant to U.C.C. § 2-608, and demanded the return of all money paid. Defendant has not made a good-faith response to that demand.

## FIRST CAUSE OF ACTION
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

58. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

60. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

61. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

62. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

63. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

64. Defendant has failed to remedy the subject vehicle's engine defect within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

65. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Idaho Code § 28-2-314**

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. Defendant is a merchant with respect to motor vehicles.

68. The Vehicle was subject to the implied warranty of merchantability, as defined in Idaho Code § 28-2-314 running from the Defendant to the Plaintiff.

69. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

70. Because Defendant made a written warranty to Plaintiff with respect to the subject vehicle, 15 U.S.C. § 2308 bars Defendant from disclaiming or modifying the implied warranty of merchantability, and any purported disclaimer of that warranty is ineffective.

71. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

72. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

73. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty, Idaho Code § 28-2-313**

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, and subsequently issued Special Coverage Adjustment N252494003, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

76. Plaintiff relied on Defendant's warranty when he agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

77. Plaintiff submitted his vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the dangerous engine defect under the vehicle's warranty as described herein within a reasonable period of time.

78. Plaintiff has given Defendant reasonable opportunities to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

79. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

80. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

81. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to the time of purchase, that the subject vehicle contained a defective engine.

82. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

**FOURTH CAUSE OF ACTION**
**Revocation of Acceptance, Idaho Code § 28-2-608**

83. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. Plaintiff reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

85. After numerous opportunities by Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

86. The defects substantially impair the value of the Vehicle to the Plaintiff.

87. By a letter dated June 25, 2026, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

88. Defendant has nevertheless failed to make a good-faith response to this demand within thirty (30) days of its receipt.

89. As a result of Defendant's conduct the Plaintiff has been damaged.

**FIFTH CAUSE OF ACTION**
**Unfair and Deceptive Practice, Idaho Code § 48-603**

90. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

91. The sale of the Vehicle to the Plaintiff under the guise that it was free from defects that would substantially impair the use, safety, or value of the Vehicle represents an unlawful or deceptive trade practice under Idaho Code § 48-603.

92. Defendant violated Idaho Code § 48-603 in one or more of the following ways:

(a) representing the subject Vehicle to be of good, merchantable quality, free of defects, when in fact it was not;

(b) representing that the repairs could be performed properly, within a reasonable time, when Defendant knew, or in the exercise of reasonable care, should have known that this was not the case;

(c) failing to repair the Vehicle within a reasonable period of time in violation of Idaho Code § 48-603; and

(d) willfully failing to disclose, and actively concealing, the known defect in the 6.2L V-8 L87 engine installed in the subject Vehicle, a fact material to the transaction that Plaintiff could not reasonably have discovered for himself.

93. Defendant is in the business of selling motor vehicles and therefore the violations are likely to affect the general public, now and in the future.

94. Furthermore, the Defendant failed to tender a reasonable settlement within thirty days of receipt of a written demand for relief which identified their failure to fulfill their obligations under the warranty and stated the Plaintiff's injury.

95. Defendant violated the law willfully and knowingly.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Incidental and consequential damages;

d. Punitive damages;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 8, 2026

By: /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*